## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 25-MJ-211** |
| **JOSHUA LEVY,** | |
| **Defendant.** | |

## UNITED STATES' EMERGENCY MOTION FOR
## REVIEW OF RELEASE ORDER AND STAY PENDING APPEAL

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully appeals and seeks this Court's review of the release order by the Honorable Magistrate Judge Matthew Sharbaugh, dated September 11, 2025. The Government requests that the Court hear an appeal to review and overturn the denial of the Government's motion for pretrial detention under 18 U.S.C. § 3142(f)(1)(B) (offense with a maximum sentence of life imprisonment) and 18 U.S.C. § 3142(f)(1)(E) (felony involving possession of a firearm) based on the evidence that the Defendant, Joshua Levy, possessed a firearm outfitted with an extended magazine in close proximity to over 440 grams of marijuana, as well as other indicia of drug distribution.

Defendant Joshua Levy poses a clear risk to community safety that will not be abated by the Court's proposed release conditions. Defendant Levy stands before this Court charged with illegally possessing a Glock 23 pistol with an extended magazine, as well as over 440 grams of Marijuana, digital scales, multiple plastic baggies, and $215 of cash in various denominations. Despite the rebuttable presumption applicable here, Magistrate Judge Sharbaugh ordered the Defendant's release to the custody of his stepmother, who holds a fulltime position as a high school

teacher and is not home to supervise the Defendant.

As argued herein, Levy should be detained pending trial as there are no conditions of release that can assure the safety of the community were he to be released. Moreover, the proposed third-party custodian is not suitable to supervise the Defendant, if the Defendant is released to home confinement.

## I.    Factual and Procedural History

On September 7, 2025, at approximately 19:57 hours, members of Target Enforcement Flex 1, comprised of the United States Marshals Service and United States Park Police, were patrolling the area of Southern Avenue SE, in Washington D.C.

During the patrol, Deputy United States Marshal Tristen Martin ("DUSM Martin") and United States Park Police Officer Nicholas Pierce ("Officer Pierce") observed a Grey Nissan Altima operating at night without headlights and without a front vehicle registration tag. Officers initiated a traffic stop near the intersection of Fitch Street and 53rd Street SE, in Washington D.C.

Upon approaching the vehicle, officers made contact with the driver and sole occupant of the vehicle, later identified as Joshua Levy. Officers requested that Levy roll down his window. When he complied, officers observed smoke emitting from the interior of the vehicle and detected the odor of burnt marijuana. Officers instructed Levy to exit the vehicle. As Levy stepped out, DUSM Martin observed, in plain view, an extended magazine and a portion of a firearm partially visible beneath the driver's seat. *See* Figure 1. Upon further inspection, DUSM Martin observed that the magazine was inserted into a Glock 23 pistol. The magazine contained 19 rounds of .40 caliber ammunition in 22 round extended magazine and 1 round in the chamber. *See* Figure 2.



*Figure 1: Firearm Recovered from Vehicle*



*Figure 2: Firearm, Magazine, and Ammunition*

A police records check of Levy revealed that he did not have a license to carry a concealed weapon in the District of Columbia as required by law. Levy also did not have a firearm registered to him as required by law.

In plain view on the passenger seat, Officer Pierce observed a bag containing marijuana, which was later weighed and contained approximately 427 grams of marijuana. Officers also observed multiple sandwich bags next to the bag of marijuana, as well as a digital scale on the passenger seat. *See* Figures 3 and 4. Officers also recovered a smaller bag of marijuana, weighing approximately 15 grams, from the center console of the vehicle, see Figure 5, as well as a digital scale in the back pocket of the passenger's seat.



***Figure 3: Marijuana, Sandwich Bags, and Digital Scale***

4



*Figure 4: Evidence Recovered from Vehicle*



*Figure 5: Marijuana in Center Console*

Upon search incident to arrest, Officers recovered $215 in US Currency in various denominations.

Based on the officers' training and experience, the quantity of marijuana, packaging, sandwich bags, multiple digital scales, and denominations of US currency found on Levy were consistent with possession with intent to distribute rather than simple possession. Drug traffickers often carry firearms to protect their drug supply and that firearms are widely considered 'tools of the trade' in drug trafficking. Due to the proximity of the firearm to the drug supply and the packaging and distribution material, officers believed that the firearm was possessed during, in relation to, and in furtherance of a drug trafficking crime.

On September 8, 2025, the Government charged Levy by Complaint with Using, Carrying, and Possessing a Firearm During and in Relation to a Crime of Violence or Drug Trafficking Offense, in violation of 18 U.S.C. § 924(c). *See* ECF No. 1. At Levy's Initial Appearance on September 9, 2025, the Government moved for Levy's detention pursuant to 18 U.S.C. § 3142(f)(1)(B) (offense with a maximum sentence of life imprisonment) and 18 U.S.C. § 3142(f)(1)(E) (felony involving possession of a firearm).

On September 11, 2025, Magistrate Judge Sharbaugh held a detention hearing, hearing arguments from both the Government and defense counsel, as well as testimony from a proposed third-party custodian, Miyoshi Levy, the Defendant's stepmother. Ms. Levy works full time, five days a week, as a high school teacher, and therefore will not be home to monitor her stepson during working hours. Judge Sharbaugh, after confirming the Government opposed the proposed custodian, ordered Levy released. Judge Sharbaugh also ordered that Ms. Levy maintain security cameras at the home and conduct random searches of the Defendant's room three times per week.

The Government indicated that it would appeal, but Judge Sharbaugh denied the Government's motion to stay. This appeal follows.

## II.  <u>Legal Authority and Argument</u>

Title 18, U.S.C. § 3145(a) states:

> (a) **Review of a release order** - If a person is ordered released by a magistrate, . . .
>
>> (1) the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release . . .

The motion shall be determined promptly.

On the Government's motion to review a release order, this Court considers *de novo* the Magistrate Judge's denial of pretrial detention. Although the D.C. Circuit "ha[s] not squarely decided the issue," *United States v. Munchel*, 991 F.3d 1273, 1280 (D.C. Cir. 2021), every other circuit to have analyzed the issue has concluded the standard is *de novo. See United States v. Blackson*, No. 23-cr-25 (BAH), 2023 U.S. Dist. LEXIS 18988, at *15 n.2 (D.D.C. Feb. 6, 2023) (collecting Court of Appeals cases from the First, Second, Third, Fourth, Fifth, Eighth, Ninth, and Tenth Circuits that support this proposition).

In its discretion, the Court may proceed to rehear the evidence by recalling the witnesses, reviewing transcripts, or by proceeding through proffer and argument. It may take additional evidence from new witnesses or consider arguments not raised previously. In short, the Court may proceed as best enables it to resolve the question posed: whether any condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community.

Under the relevant detention statutes, pretrial detention must be supported by clear and

convincing evidence when the justification involves the safety of the community. *United States v. Simpkins*, 826 F.2d 94, 96 (D.C. Cir. 1987). A defendant must be detained pending trial, if the Court determines that no condition or combination of conditions "will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). A finding of either risk of flight or danger is sufficient for detention. *See, e.g.*, *United States v. Ferranti*, 66 F.3d 540, 543-44 (2nd Cir. 1995).

### 1. **The United States' States Bases for Detention**

The United States seeks detention pursuant to 18 U.S.C. § 3142(f)(1)(B) (offense with a maximum sentence of life imprisonment) and 18 U.S.C. § 3142(f)(1)(E) (felony involving possession of a firearm) because the Defendant is a danger to the community, given his reckless and dangerous actions in possessing a loaded firearm in close proximity to large quantities of drugs and distribution paraphernalia.

A defendant must be detained pending trial if the court determines that no condition or combination of conditions "will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(f)(1). The government must establish by clear and convincing evidence that a defendant is a danger to the community. *United States v. Peralta*, 849 F.2d 625, 626 (D.C. Cir. 1988). In contrast, "[a] determination that an individual is a flight risk must be supported by a preponderance of the evidence." *United States v. Vasquez-Benitez*, 919 F.3d 546, 551 (D.C. Cir. 2019). The Act provides, however, that for certain crimes such as violations of § 924(c), there is a rebuttable presumption that no conditions or combinations of conditions will assure the safety of the community. *See id; see also United States v. Wade*, No. 07-CR-61, 2007 U.S. Dist. LEXIS 49894, at *3 (E.D. Wis. July 9, 2007)

(firearm offenses under § 924(c) "create a rebuttable presumption that no conditions will reasonably assure the appearance of the defendant and the safety of the community"); *United States v. Baldazo*, No. 2:11 CR 77, 2012 U.S. Dist. LEXIS 200012, at *7 (N.D. Ind. Apr. 19, 2012) (same).

As the court is aware, 18 U.S.C. § 3142(g) enumerates four factors that the court should analyze in determining whether to detain the defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. Each of these factors weighs in favor of pretrial detention in this case. *See* 18 U.S.C. § 3142(g).

### A.    <u>The Nature and Circumstances of the Offenses Weigh in Favor of Detention</u>

The nature of the defendant's conduct is serious and weighs heavily in favor of pretrial detention in this case. Levy is charged with a serious offense carrying significant penalties; for violating 18 U.S.C. § 924(c), Levy faces a mandatory minimum sentence of 5 years imprisonment, and a maximum sentence of life in prison.

As a threshold matter, the Court has repeatedly held that simple possession of a loaded firearm poses a risk of danger to the community. *See, e.g., United States v. Cole*, 459 F. Supp. 3d 116, 120 (D.D.C. 2020) (noting that a loaded firearm "has the great potential to escalate into violence," particularly when defendant's prior convictions indicate a predilection for violence); *United States v. Riggins*, 456 F. Supp. 3d 138, 144 (D.D.C. 2020); *United States v. Gassaway*, No. 21-cr-550 (RCL), 2021 U.S. Dist. LEXIS 175978 at *9-10 (D.D.C. Sept. 16, 2021) (collecting cases in this district holding that unlawful firearm possession is dangerous to the public); *United*

*States v. Howard*, No. 20-mj-181 (BAH), 2020 U.S. Dist. LEXIS 172978, 2020 WL 5642288, at
*3 (D.D.C. Sept. 21, 2020) ("Illegally possessing a concealed firearm in public where other people
are congregated, as alleged, poses an inherent risk of danger to the community."); *see also United
State v. Kent*, 496 F. Supp. 3d 500, 502 (D.D.C. 2020) (holding that a defendant should be detained
pretrial in part because "the firearm recovered from the defendant's person had a round already
chambered, making the circumstances even more troubling"), *aff'd* (D.D.C. Nov. 5, 2020).

However, this crime presents a particular danger to the community because the firearm
recovered from Levy was possessed in close proximity to a distribution-level of narcotics and
distribution paraphernalia, including scales, baggies, and cash.

This Court has repeatedly recognized the dangerousness associated with carrying a firearm
in connection with drug distribution. *See, e.g.*, *United States v. Carr*, No. CR 22-289 (RDM), 2022
WL 13947798, at *4 (D.D.C. Oct. 22, 2022) (finding the first factor weighed in favor of detention
given "the combination of drug distribution *and* the illegal possession of guns presents a serious
danger to the community."); *United States v. Taylor*, 289 F. Supp. 3d 55, 71 (D.D.C. 2018)
("[A]lthough the mere fact that the defendant possessed a firearm does not constitute evidence of
a danger to the community, possession of a firearm by a convicted felon who is allegedly engaged
in illegal drug distribution is a different matter.").

The nature and circumstances of this offense weighs in favor of detention.

**B.    The Weight of the Evidence Against the Defendant Favors Pretrial Detention**

The weight of the evidence against the defendant also weighs in favor of pretrial detention.
The facts here are generally not in dispute. After Levy was *Mirandized*, he was interviewed by
agents from the Bureau of Alcohol, Tobacco, Firearms, and Explosives. Levy admitted to

possessing the firearm and purchasing it from another individual for $900. He also admitted to possessing the marijuana, which was found in close proximity to the firearm and other distribution paraphernalia.[1] This factor weighs also weighs heavily in favor of detention.

### C.    The Defendant's History and Characteristics Weigh in Favor of Detention

The third factor—the history and characteristics of the defendant—favors detention because the defendant is dangerous and a flight risk.

Although Defendant Levy is 21 years old and has no criminal history, he now stands before this Court charged with a violation of 18 U.S.C. § 924(c), an offense that carries a mandatory minimum of five years imprisonment and maximum term of life imprisonment. The serious nature of the offense charged, along with the potential life sentence it could carry, creates a rebuttable presumption in favor of detention and functions as evidence that Levy poses a flight risk. *See United States v. Bess*, 678 F. Supp. 929, 934 (D.D.C. 1988); *see also In re Extradition of Brunner*, No. 24-mj-49, 2024 U.S. Dist. LEXIS 133052, at *9 (D.D.C. July 29, 2024) ("Courts have considered both age and the seriousness of the offenses as incentives to flee."); *United States v. Ingram*, 415 F. Supp. 3d 1072, 1085 (N.D. Fla. 2019) ("A defendant facing a substantial term of imprisonment has commensurate incentive to flee insofar as the cost of taking his chances at trial is great in comparison to the cost of fleeing"); *United States v. Ferrer-Sosa*, 28 F. Supp. 3d 122, 130 (D.P.R. 2014) (finding that long sentences, mandatory life or over (20) years, together with strong inculpating evidence constitutes a high flight risk of flight). Therefore, this factor weighs in favor of detention.

---

[1] During the interview, Levy also attempted to tell ATF agents that the over 440 grams of marijuana, which was recovered near two digital scales and multiple plastic baggies, was for his own personal consumption.

**D.** **The Danger to the Community Created by Defendant's Release Weighs in Favor of Detention**

The fourth factor, the nature and seriousness of the danger to any person or the community posed by the Defendant's release, similarly weighs in favor of detention.

"At the outset, it cannot be gainsaid that unlawful possession of a firearm that is unregistered and fully loaded, with an extended capacity magazine, carried in a position of easy, quick access poses a significant danger to other persons and the community." *United States v. Blackson*, No. 23-cr-25 (BAH), 2023 U.S. Dist. LEXIS 18988, at *33 (D.D.C. Feb. 6, 2023). The absence of use does little to detract from the danger posed by a firearm of this caliber, loaded with 19 rounds of ammunition in an extended magazine, more ammunition than the gun was originally designed to carry, thereby increasing its potential to do greater harm. *Id*.

Here however, Levy did not just possess this weapon; he also possessed over 440 grams of marijuana, digital scales, multiple plastic baggies, and $215 in cash in various denominations. While the Defendant's crime in this case did not result in any direct violence against another, possession of dangerous firearms equipped with extended magazines, especially when in connection with large quantities of narcotics, can and often does lead to dangerous consequences, thereby underscoring the need to take such crimes seriously. This fourth factor, as with all the three prior factors, weighs heavily in favor of pretrial detention.

**E.** **The Proposed Third-Party Custodian Cannot Ensure the Safety of the Community**

Magistrate Judge Sharbaugh found that the Defendant's stepmother could effectively supervised the Defendant and mitigate the danger he presents. Specifically, he ordered that Levy be placed in home detention at his stepmother's (and father's) residence, under his stepmother's supervision. The Government does not question the good faith of Ms. Levy to watch over her

12

stepson. But it is indisputable that Ms. Levy, with whom the Defendant has lived for most of his life, has not prevented him from obtaining firearms and distribution levels of narcotics. Further, because Ms. Levy holds a fulltime job as a high school teacher, the Defendant would either be alone for much of the day, or he would be supervised by his father, who was deemed ineligible to serve as a third-party custodian because of his own criminal history.

While Courts have endorsed third-party custodians, such a custodian makes more sense when they are available to effectively supervise the Defendant. *See United States v. Terrell*, No. 23-292-6 (CKK), 2023 U.S. Dist. LEXIS 219652, at *20 (D.D.C. Dec. 11, 2023) (finding that Defendant's aunt is not suitable third-party custodian, as she works outside the home from 9:30 AM to 2:30 PM); *see also United States v. Walker*, No. 4:16-cr-00019-05, 2016 U.S. Dist. LEXIS 141435, at *20 (M.D. Pa. May 12, 2016) ("Defendant's grandmother has a full-time job and is away from her residence during the workday, leaving the Defendant unsupervised and free to participate in illicit activity. Clearly, neither of these options is viable."). Here, Ms. Levy is employed fulltime during the day as a high school teacher—a demanding job that requires her full undivided attention. Despite her best intentions, it is unlikely that Ms. Levy will be able to fully supervise the Defendant given her work schedule and commitments.

Magistrate Judge Sharbaugh found that the issues faced by Ms. Levy's absence during the day could be mitigated by her constantly reviewing alerts from motion-sensing cameras that are placed around the house. The Government respectfully disagrees. Indeed, the challenge faced by third-party custodians, who are essentially being asked to act like correctional officers twenty-four-hours a day for someone they care for deeply, has repeatedly been recognized by courts in this jurisdiction. *See* Order (ECF No. 14), *United States v. Joyner*, 22-CR-252 (TNM) (D.D.C.

Aug. 3, 2022) (reversing the magistrate court's order releasing the defendant to a third-party custodian); Order (ECF No. 55), *United States v. Handy*, 22-CR-164 (RBW), *aff'd*, Case No. 22-3045, (D.C. Cir. 2022) (same); Order, (ECF No. 54), *United States v. Charles Cunningham*, 23-CR-7 (JMC) (D.D.C. Mar. 13, 2023) ("third-party custodian, no matter how competent or dedicated, cannot stand in the shoes of the defendant. Nor should a third-party custodian be cast in the role of jailer…. Mr. Cunningham's custodians cannot supervise his behavior on a 24/7 basis."); Order, (ECF No. 18), *United States v. Trevor Wright*, 22-CR-410 (CRC) (D.D.C. Dec. 23, 2022) ("family members are not correctional officers. Nor should they be expected to play that role"); Order, (ECF No. 10), *United States v. Steffon Frazier*, 23-CR-255 (ABJ) (D.D.C. Sept. 18, 2023) (reversing magistrate judge's decision appointing a mother as a third-party custodian in a gun possession case). To convert Ms. Levy into the Defendant's remote warden, while she is simultaneously teaching high school classes and supervising dozens of teenage students, is simply not a viable or fair solution to keeping the community safe.

### III.  <u>Conclusion</u>

The government respectfully requests that the court reverse Judge Sharbaugh's decision and detain Levy pending trial.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

By:    */s/ Jonathan A. Sussler*
       Jonathan A. Sussler
       N.Y. Bar No. 5973912
       Special Assistant United States Attorney
       United States Attorney's Office
       for the District of Columbia
       Federal Major Crimes Section
       601 D Street NW
       Washington, D.C. 20530
       (202) 815-8576
       Jonathan.Sussler2@usdoj.gov